# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARTHUR COLL, ET AL. | CIVIL ACTION |
| VERSUS | NUMBER 07-5260 |
| ALLSTATE INSURANCE COMPANY | SECTION "L" (2) |

## ORDER & REASONS

Before the Court are the Defendant's First Motion for Partial Summary Judgment (Rec. Doc. 24) and Second Motion for Partial Summary Judgment (Rec. Doc. 26). For the following reasons, the first motion is GRANTED and the second motion is GRANTED IN PART AND DENIED IN PART.

**I.  BACKGROUND**

This case arises out of a dispute regarding insurance coverage for the Plaintiffs' residence located at 3415 Ole Miss Drive in Kenner, Louisiana, which suffered both flood and wind damage as a result of Hurricane Katrina. The Plaintiffs had flood and homeowner's insurance policies with Allstate Insurance Comany ("Allstate"), which is made a defendant in this action in its capacity as the Plaintiffs' homeowner's insurer.

On or about September 9, 2005, the Plaintiffs filed claims with Allstate under both their flood and homeowner's insurance policies. On the same date, Allstate issued a check to the Plaintiffs in the amount of $2,500. The parties dispute whether the check was for additional living expenses or an advance on contents.[1] On January 6, 2006, Allstate, in its capacity as the Plaintiffs' flood insurance carrier, resolved the flood claims, forwarding to the Plaintiffs a total

---

[1]The inscription on the check reads: "Contents advance, storm loss."

of $40,250.44 for structural damages to their residence resulting from flood damage.

The Plaintiffs also made claims under their homeowner's insurance policy, which has structural damage limits of $121,424. In its capacity as the Plaintiffs' homeowner's insurer, Allstate made an additional two payments to the Plaintiffs for structural damages to their residence: first, on December 28, 2005, Allstate paid the Plaintiffs $9,997.88; and second, on January 24, 2006, after the Plaintiffs contended that the first payment was insufficient, Allstate readjusted the claim and made an additional payment of $10,929.00.

In total, the Plaintiffs have received $59,005.58 for structural damages to their residence under both their flood and homeowner's insurance policies. Although the Plaintiffs contend that they faxed a contents list to Allstate adjuster Jimmy Bowling at least "fifteen to twenty-five times" in late 2005, Allstate did not resolve the contents claim until December 9, 2008. The parties further dispute whether Allstate ever made payments to the Plaintiffs for additional living expenses.

On August 30, 2007, the Plaintiffs filed the present action in this Court, seeking damages for breach of contract, negligent misrepresentation, unjust enrichment, and statutory bad faith penalties. In addition, the Plaintiffs also seek compensation for the value of their residence as a total loss under the Louisiana Valued Policy Law.

## II. PRESENT MOTION

Allstate has filed two separate motions for partial summary judgment on a variety of issues. In Allstate's first motion, it seeks summary judgment on the Plaintiffs' claims under the Louisiana Valued Policy Law ("VPL"). Allstate argues that the Plaintiffs are not entitled to collect under the VPL because their residence suffered significant damage from flood, a non-covered peril. According to Allstate, the VPL is only applicable if the insured property is

rendered a total loss by a covered peril, such as wind. The Plaintiffs did not file a response to the motion.

In its second motion for partial summary judgment, Allstate argues that it is entitled to summary judgment on several additional issues, including: 1) whether the Plaintiffs may recover any additional compensation for structural damages under their homeowners' policy; 2) whether the Plaintiffs are entitled to any additional living expenses; 3) whether the Plaintiffs are entitled to bad faith claims; 4) whether the Plaintiffs are entitled to damages for mental anguish; and 5) in the event that the Plaintiffs are entitled to assert bad faith claims, whether they may recover attorney's fees or any statutory penalties greater than 25% of their proven damages. The Plaintiffs filed an opposition to Allstate's second motion, contending that summary judgment is inappropriate because there are significant factual issues remaining to be resolved at trial.

## III.   LAW & ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issue of material fact." *McCall v. Focus Worldwide Television Network, Inc.*, 2008 WL 3366080, *3 (E.D. La. Aug. 8, 2008). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to

the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

### A. Louisiana Valued Policy Law

The Louisiana Valued Policy Law states, in relevant part

> Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

LA. REV. STAT. ANN. § 22:695. In essence, the VPL was adopted for two main purposes: first, "to keep insurers from writing insurance on property for more than it was actually worth, collecting premiums based on that overvaluation, and later arguing that the property was worth less than the face value when the property was destroyed;" and second, "to discourage intentional destruction of property by insureds when they are permitted to over insure their property." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 239 (5th Cir. 2007). For purposes of this opinion, the Court will assume that the VPL applies to damages resulting from other covered perils and is not solely limited to damages resulting from fire.

In *Chauvin*, the plaintiffs asserted claims under the Louisiana VPL for both wind- and flood-related damages to their home. *Id.* at 235-36. The district court granted the insurers' motion to dismiss, holding that the VPL does not apply when a total loss does not result from a covered peril. *Id.* at 236. On appeal, the Fifth Circuit affirmed the district court's decision on the grounds that "the VPL only requires an insurer to pay the agreed face value of the insured

property if the property is rendered a total loss from a covered peril." *Id.* As the Fifth Circuit explained, requiring an insurer to pay the face value of a property rendered a total loss from a non-covered peril would "run counter to the VPL's effort to link insurance recoveries to premiums paid." *Id.*[2]

Allstate argues that the VPL is inapplicable because the Plaintiffs' residence suffered significant damage from flood, a non-covered peril. Based on the pleadings and the evidence currently before the Court, it is clear that the Plaintiffs' residence suffered significant damage from flood waters. The Plaintiffs themselves concede as much, alleging in their complaint that their residence "suffered massive damage, including storm water, flood and wind damage..." In their response to Allstate's second motion for summary judgment, the Plaintiffs further acknowledge that, in addition to taking on damage from wind and wind-driven rain, "[t]hey also suffered some flood damage to parts of the ground floor." Further, the Plaintiffs have already collected $40,250.44 from Allstate in its capacity as flood insurer for structural damages to their property. On the other hand, the Plaintiffs have offered no evidence or expert testimony to indicate that wind or wind-driven rain rendered their property a total loss. Accordingly, the

---

[2] Indeed, as the district court noted, accepting the plaintiffs' broad interpretation of the VPL could lead to absurd results:

> If the VPL has the meaning plaintiffs ascribe to it, an insured holding a valued homeowner's policy that covered wind damage but specifically excluded flood losses could recover the full value of his policy if he lost 20 shingles in a wind-storm and was simultaneously flooded under 10 feet of water. The insurer would thus have to compensate the covered loss of a few shingles at the value of the entire house. In effect, the insurer would be required to pay for damage not covered by the policy and for which it did not charge a premium. Such a result would be well outside the boundaries of the party's reasonable expectation of the operation of an insurance contract.

*Chauvin v. State Farm Fire & Cas. Co.*, 450 F. Supp. 2d 660, 666 (E.D. La. 2006).

Court finds that permitting the Plaintiffs to recover under the VPL would undermine the purposes of the statute by compensating them for losses not provided for in their insurance contract.[3] The Defendant is therefore entitled to summary judgment on this issue. *See Wineski v. Aegis Sec. Ins. Co.*, No. 06-7187, 2008 WL 544544, *2 (E.D. La. Feb. 27, 2008) ("As the plaintiffs' property was damaged by a combination of water and wind, the total loss was not restricted to a covered peril and VPL is not applicable.").

### B. Additional payments under the Plaintiffs' homeowner's policy

In its second motion for partial summary judgment, Allstate first argues that the Plaintiffs should not be entitled to any additional payments for structural damages pursuant to their homeowner's policy. In support of its argument, Allstate points to three estimates that the Plaintiffs provided to their mortgage company in order to obtain funds to begin work on their house. These estimates were prepared by Mr. Coll's brother-in-law, a contractor, who estimated the total cost of repairs and upgrades to the residence to be approximately $41,749.10. According to Allstate, the Plaintiffs should be precluded from recovering additional damages under their homeowners' policy because they have already collected funds in excess of these initial estimates. In the alternative, Allstate asks the Court to find that, at a minimum, any

---

[3]*See Ragas v. State Farm Fire & Cas. Co.*, No. 07-1143, 2008 WL 425536, *6 (E.D. La. Feb. 11, 2008) ("[T]he Valued Policy Law ... only applies to 'covered' losses. Flood damage is specifically excluded by [the insured's] homeowner's policy. This Court refuses to interpret [the VPL] in such a way as to permit double recoveries for the same loss under homeowner's and flood policies."); *Turk v. La. Citizens Prop. Ins. Corp.*, No. 06-144, 2006 WL 1635677, *1 (W.D. La. June 7, 2006) ("[B]ecause the homeowner's policies at issue exclude coverage for damage caused by flood water, and thus the policyholders did not pay a premium for flood coverage under their homeowner policies, [the VPL] cannot be construed to require [the insurer] to pay the policy limits ... when the insured property was rendered a total loss, in whole or in part, by a non-covered peril such as flood waters...").

recovery the Plaintiffs may have under their homeowner's policy should be limited to the actual structural loss due to wind minus the recovery they have already received from their wind policy.

The Plaintiffs argue in response that they initially provided the three estimates in question solely for the limited purpose of securing funds from their mortgage company. The Plaintiffs contend that the estimates were never intended to reflect the final cost of repairs to their residence and should not bind them to any particular amount of recovery. According to the Plaintiffs, the total cost of materials used to repair the residence was approximately $100,000, including upgrades. The Plaintiffs further estimate that Mr. Coll did approximately $16,000 worth of work to the house himself. The Plaintiffs have provided some documentation of these expenses to Allstate but claim that Mr. Coll kept many of his materials receipts in a zipper bag in his truck, which was stolen.

The Court finds that there are genuine issues of material fact as to the total cost of repairs for wind-related damages to the Plaintiffs' residence. The estimates by which Allstate attempts to limit the Plaintiffs' recovery appear to have been produced *prior* to any repairs taking place. Accepting Allstate's argument—that the Plaintiffs should be limited to recovering only the amount of damages projected in their initial, pre-repair estimates, without taking into consideration any other factors—would clearly lead to undesirable results. The total cost of repairs and the amount of repairs attributable to wind-related damages raise factual issues that are not appropriate for summary judgment. Allstate's motion is therefore denied as to this issue. The Court notes, however, that the Plaintiffs may face considerable difficulties at trial if they are unable to segregate the damages that are attributable to wind from those that are attributable to flood. *See Esposito v. Allstate Ins. Co.*, No. 06-1837, 2007 WL 1125761, *1 (E.D. La. Apr. 16, 2007). Although the Plaintiffs have generally indicated which areas of the house they believe

suffered wind damage and which areas suffered flood damage, they have apparently made little attempt to parse the costs of the damages attributable to each respective peril. Nevertheless, the matter raises genuine issues of fact and the Plaintiffs should have the opportunity to present evidence in support of their claims at trial.

In the alternative, however, Allstate seeks a ruling that any recovery the plaintiffs may have under their homeowner's policy should be limited to the actual structural loss due to wind minus the recovery they have already received from their wind policy. To date, the Plaintiffs have received $18,005.88 from their wind policy. Any additional recovery due to the Plaintiffs under their homeowner's policy should be offset by this figure, as the Plaintiffs are not entitled to double recovery. Further, the Court finds that the Plaintiffs have the burden of demonstrating that particular damages are attributable to wind damage as opposed to flood damage. *See* COUCH ON INSURANCE § 157:9 (3d ed. 2006) ("It is an insured's burden to produce evidence that would afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by the covered peril and that by the excluded peril."). The Plaintiffs may not re-characterize as wind damage losses for which they have already accepted flood insurance compensation. *Esposito*, 2007 WL 1125761, *1 (explaining that a plaintiff may not "re-characterize as wind damage those losses for which [the plaintiff] has already been compensated by previously attributing them to flood waters").[4] Simply put, the Plaintiffs can recover for

---

[4] In *Halmekangas v. State Farm Fire Ins. Co.*, the court considered a case in which the plaintiff sought compensation from his insurer for damages resulting both from flooding during Katrina and from a fire that occurred shortly afterwards. No. 06-3942, 2008 WL 5381603, *3 (E.D. La. Dec. 19, 2008). As the court explained:

> [Plaintiff] cannot recover under his fire policy for the same damages that he has already recovered under his flood policy... [T]o the extent that there remain factual issues pertaining to the actual pre-storm value of [plaintiff's] property, and to the

damages under both their homeowner's and flood policies, but they have the burden of showing that they are not recovering twice for the same damages. *See Wellmeyer v. Allstate Ins. Co.*, No. 06-1585, 2007 WL 1235042, *2 (E.D. La. Apr. 26, 2007) ("[N]othing bars the [plaintiffs] from collecting under their homeowner's policy for wind damage and from collecting under their flood policy if they can segregate and prove the two types of damages."). Accordingly, Allstate's motion is granted on this issue.

### C. Additional Living Expenses

Allstate next seeks summary judgment on the issue of whether the Plaintiffs are entitled to assert claims for additional living expenses. Allstate contends that it paid the Plaintiffs $2,500 for additional living expenses on September 9, 2005. Allstate further argues that the $2,500 more than compensated the Plaintiffs for any of their additional living expenses. In support of its argument, Allstate points to the affidavit of Michelle Coll, in which she states that she "thinks" that Allstate sent her $2,500 for additional living expenses on September 9, 2005. In her deposition testimony, Ms. Coll also indicates that she does not believe that she has any other claims for additional living expenses against Allstate in excess of the initial $2,500 she received shortly after the hurricane.

The Plaintiffs oppose summary judgment on this issue, contending that the check for $2,500 clearly states that it is an advance on contents loss and not a payment for additional living

---

> extent that [plaintiff] may be able to segregate ... damages attributable to the flooding during Katrina from those damages attributable to the fire after Katrina, [he] is entitled to present evidence regarding these issues.

*Id.*

expenses. In addition, the Plaintiffs suggest that they were unaware that living expenses were available under their homeowner's policy and that Allstate's failure to provide such expenses led to the Plaintiffs' having to stay in a FEMA trailer. In a later affidavit, Ms. Coll estimates that, had she and her husband known that they were entitled to additional living expenses, they would have sought approximately $21,600 to rent a reasonably comparable property. The Plaintiffs also argue that Ms. Coll was confused when she stated that she did not believe that she had additional claims for living expenses.

The Court finds that there are material issues of fact as to whether Allstate provided the Plaintiffs with additional living expenses and also the amount of such living expenses, if any, the Plaintiffs may have been entitled to receive. The $2,500 check that Allstate claims it sent to the Plaintiffs for additional living expenses clearly states that it is an advance on contents loss. The question of whether the parties may have otherwise reached an understanding that the check sufficiently covered the Plaintiffs' additional living expenses–or whether the Plaintiffs represented to Allstate that they did not have any expenses–present factual issues that are not appropriate for summary judgment. Accordingly, the Defendant's motion is denied on this point.

D. **Statutory Bad Faith Claims**

Allstate next seeks a ruling that it did not act arbitrarily or capriciously in its handling of the Plaintiffs' claims for structural damages or additional living expenses under their homeowner's policy. Allstate contends that it had a reasonable basis to defend the claims and therefore cannot be held liable for statutory penalties. The Plaintiffs' oppose the request and argue that they have made a sufficient showing to survive a motion for summary judgment.

The Court finds that there are genuine issues of material fact as to how Allstate handled the Plaintiffs' claim. The Plaintiffs allege that they first contacted Allstate regarding their loss on September 9, 2005. According to the Plaintiffs, Allstate did not send an adjuster out to inspect the property until October 21, 2005. The Plaintiffs further allege that Allstate did not issue them a check for structural damages until December 28, 2005, more than sixty days after the initial inspection. In the interim period, Ms. Coll claims that she faxed her list of contents to her Allstate adjuster between fifteen and twenty-five times without a response. Further, as the Court has already noted, there are additional issues of fact concerning whether the Plaintiffs were entitled to additional living expenses and, if so, the amount to which they may have been entitled. The Plaintiffs should at least be permitted to present evidence in support of these claims at trial.

### E.     Mental Anguish

Allstate next contends that under Louisiana law the Plaintiffs may not recover damages for mental anguish and physical or emotional distress for the alleged breach of an insurance contract. Allstate argues that the Louisiana Supreme Court's decision in *Sher v. Lafayette Insurance Co.,* 07-2441 (La. 2008); 988 So. 2d 186, precludes recovery for mental anguish under Louisiana Revised Statute 22:1220. Allstate further contends that, even if the Plaintiffs are entitled to assert a claim for mental anguish, they have not presented sufficient evidence to survive a motion for summary judgment. In response, the Plaintiffs counter that Louisiana law does in fact permit plaintiffs to recover damages for mental anguish. The Plaintiffs allege that they suffered mental and emotional distress because they had to stay in a crowded FEMA trailer

as a result of Allstate's purported breaches of contract, including, *inter alia*, Allstate's failure to pay additional living expenses.

In *Gaffney v. State Farm Fire & Casualty Co.*, 06-8143, 2008 WL 4656926, *1 (E.D. La. Oct. 21, 2008), the court, faced with a similar situation, considered whether the Louisiana Supreme Court's decision in *Sher* precluded recovery of damages for mental anguish under 22:1220. Although the defendant insurer argued that *Sher* precluded recovery of such damages as a matter of law, the court in *Gaffney* explained that the Louisiana Supreme Court's holding was not nearly so broad. *Id.* Rather, as the court in *Gaffney* explained, the Louisiana Supreme Court had "simply held that the plaintiff *in that particular case* failed to provide sufficient evidence to recover mental anguish damages pursuant to Louisiana Civil Code Article 1998, which permits damages for nonpecuniary loss in contract claims ... [when] the insurance company knew or should have known that its failure to perform would cause mental anguish or that the insurer intended to 'aggrieve the feelings' of the plaintiff because of its failure to pay." *Id.* (quoting *Sher*, 988 So. 2d at 202-03). In accordance with a long line of cases establishing that plaintiffs may, upon a sufficient showing, recover damages for mental anguish resulting from the breach of an insurance contract under 22:1220, the *Gaffney* court denied the defendant's motion for summary judgment, holding that the plaintiffs should at least be permitted to introduce evidence of mental anguish at trial in support of their claims. *Id.* (citing *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 474 (E.D. La. 2007) (holding that plaintiffs are entitled to damages for mental anguish under 22:1220); *Boers v. State Farm Fire & Cas. Co.*, No. 06-830, 2007 WL 2670087, *1 (E.D. La. Sept. 7, 2007) (same); *Orellano v. La. Citizens Prop. Ins. Co.*, 07-1095 (La. App. 4 Cir. 12/5/07); 972 So. 2d 1252 (same)).

The Court finds the reasoning in *Gaffney* persuasive and holds that the plaintiffs may, upon a sufficient showing, recover damages for mental anguish under 22:1220. Accordingly, because the Plaintiffs' claims for mental anguish raise genuine issues of material fact, the defendant's motion is denied as to this issue.

F.  **Statutory Penalties and Attorney's Fees**

Finally, Allstate seeks summary judgment on the issue of whether the Plaintiffs are entitled to collect attorney's fees or any penalties greater than 25% of the Plaintiffs' proven damages. Allstate contends that the 2006 amendment to Louisiana Revised Statute 22:658 is inapplicable to the Plaintiffs' claims, which, according to Allstate, accrued prior to the amendment. In response, the Plaintiffs argue that Allstate had an ongoing duty of good faith to its insureds such that its failure to resolve the Plaintiffs' claims constituted a continual breach of the statute. The Plaintiffs also contend that they triggered application of the amendment by filing their complaint after the date of the amendment and informing Allstate of their alleged damages and expenses during deposition testimony.

In 2003, the Louisiana Legislature amended Section 658 to increase the statutory penalties for an insurer's bad faith breach of contract.[5] Whereas the prior version of the statute had allowed for recovery of attorney's fees and penalties equal to only 10% of the plaintiff's proven damages, the 2003 amendment increased the penalty provision to 25% but omitted any award for attorney's fees. *See* 2003 La. Acts No. 790. On August 15, 2006, the Legislature

---

[5] Effective January 1, 2009, Section 22:658 was renumbered is now titled Section 22:1892. *See* La. Acts 2008, No. 415, §1.

again amended the statute, this time increasing the penalty provision to 50% of the plaintiff's proven damages and once again allowing for the award of attorney's fees.

Because the Plaintiffs' cause of action accrued prior to the enactment of the amendment and the Legislature did not intend the amendment to apply retroactively, the amendment is not applicable to the Plaintiffs' claims. The Plaintiffs allege that Allstate acted in bad faith by failing to timely resolve their claims after sending an adjuster to inspect the residence in October 21, 2005. Under Louisiana law, in general "the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues." *Cole v. Celotex*, 599 So. 2d 1058, 1063 (La. 1992); *see also Brown v. RJ Reynolds Tobacco Co.*, 52 F.3d 524, 527 ("A cause of action accrues when a plaintiff may bring a lawsuit."). Further, there is no evidence that the Louisiana Legislature intended the amendment to apply retroactively; rather, there is, to the contrary, considerable evidence that the Legislature intended *not* to apply the amendment retroactively. *See* LA. REV. STAT. ANN. §1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated."); LA. CIV. CODE ANN. ART. 6 (1999) ("In the absence of contrary legislative expression, substantive laws apply prospectively only."); *see also Broussard v. State Farm Fire & Cas. Co.*, No. 06-8084, 2007 WL 2264535, *8 (E.D. La. Aug. 2, 2007) ("The legislature did not include such an expression [of retroactive application] in 2006 La. Acts No. 813, and federal and state courts have consistently declined to read in a legislative intent to retroactively apply amendments to Section 22:658 in its absence.").

In the instant case, the Plaintiffs' cause of action accrued upon Allstate's alleged bad faith in failing to timely resolve their claims within sixty days of receiving the initial proof of loss–well before the Legislature amended Section 658. The Plaintiffs' arguments in support of deviating from this well-established precedent are not persuasive. *See Empire Inn, LLC v. State*

*Farm Fire & Cas. Co.*, No. 06-4939, 2007 WL 2751203, *3-4 (E.D. La. Sept. 18, 2007) (finding 2006 amendment to Section 658 inapplicable to Hurricane Katrina bad faith insurance claims despite plaintiffs' argument for insurer's ongoing duty of good faith). Accordingly, the Court grants the Defendant's motion for summary judgment on this issue and finds that the Plaintiffs' recovery of penalties under Section 22:658, if any, is limited to 25% of the amount found to be due to them under their homeowner's policy, and they are not entitled to attorney's fees.

## IV.   CONCLUSION

For the reasons stated above, the Defendant's First Motion for Partial Summary Judgment IS GRANTED and Second Motion for Partial Summary Judgment IS GRANTED IN PART AND DENIED IN PART.

New Orleans, Louisiana, this  16th  day of  January , 2009.

  _____
   UNITED STATES DISTRICT JUDGE